IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
Assigned on Briefs December 4, 2023

**SHANE BRUCE v. CAROLYN JACKSON ET AL.**

**Appeal from the Circuit Court for Campbell County**
No. 16843     Michael S. Pemberton, Judge

———————————————————

**No. E2023-00443-COA-R3-CV**

———————————————————

In this intrafamily dispute, a son sued his mother and various other family members following the death of his father. The claims included, *inter alia*, breach of contract, libel and slander, and wrongful death. The defendant family members eventually filed a motion for summary judgment, arguing that statutes of limitation barred several of the son's claims, and that there was no evidence the son could point to in support of his additional claims. Following a hearing, the trial court granted summary judgment to the defendants and dismissed the suit. The son appeals. Having determined that the son's brief is not compliant with the relevant rules of briefing in this Court, we conclude that his issues purportedly raised on appeal are waived and the appeal is dismissed.

**Tenn. R. App. P. 3 Appeal as of Right; Appeal Dismissed; Case Remanded**

KRISTI M. DAVIS, J., delivered the opinion of the Court, in which ANDY D. BENNETT, J., and J. STEVEN STAFFORD, P.J., W.S., joined.

Shane Bruce, LaFollette, Tennessee, Pro Se.

Adam M. Bullock, LaFollette, Tennessee, for the appellees, Carolyn Jackson, Jessica Jackson, Joseph McDowell, Morgan Jackson, and The Okey S. and Carolyn M. Jackson Revocable Living Trust.[1]

---

[1] The trust is also referred to in the record as the "Jackson Family Trust."

# OPINION

## BACKGROUND

On October 29, 2018, Shane Bruce[2] ("Appellant") filed suit against his mother, Carolyn Jackson, and various other family members, as well as a family trust ("Defendants" or "Appellees"), in the Circuit Court for Campbell County (the "trial court"). Appellant titled his complaint "Petition for Financial Division, Breach of Contract, Damages from Fraud and Wrongful Death Suit." Appellant's father, Okey Jackson, passed away in December of 2017.[3] Many of the allegations in the petition seem to claim that Defendants caused Mr. Jackson's death through nefarious means such as arsenic poisoning.[4] While difficult to understand, the petition also alleged that Defendants owed Appellant money for his "sweat equity," including Appellant's "lumberjacking" services, in a family business; that Appellant's brother stole his identity; and that Appellees exerted undue influence over Mr. Jackson in the months leading up to his death. As for his damages, Appellant alleged as follows:

> As their frauds have cost me my career and years of expenses and undue burden. I also ask an $400,000.00, nominally that of $20,000 per year over a 20 year period a minimum of damages incurred with pain and suffering from several incidents of occursion [sic] against me based on the false records and false claims due to damages to my reputation and real damages to legal difficulted arising from them of an additional $100,000.00, for a total of $500,000.00 (Five Hundred Thousand) be awarded me from the Respondents Morgan Land Jackson, Jessica A. Jackson, and Carolyn Marsh Jackson due to the damages in loss of salary and other income from the time and costs that all those false reports and the many fake and stolen identities caused to me as damages, as well as any punitive damages and court costs as well as any cost the multiple states and law enforcement agencies, might claim against Morgan Jackson and his required participation with whatever legal services and law enforcement investigators to clear the records. If Qui Tam or FCA charges apply to the amount as appropriate.

Following contentious discovery and pre-trial motions, Defendants filed a motion for summary judgment on October 8, 2021. Defendants argued that any claims sounding in breach of contract, slander, or identity theft were time-barred; that Appellant could not

---

[2] Appellant is formerly known as Rustin Jackson.

[3] Mr. Jackson's death certificate provides that his cause of death was "Temporal Lobe Degeneration" and that the manner of death was "Natural."

[4] The record shows that Appellant also claims to be a victim of arsenic poisoning.

establish any facts as to his claims for undue influence or duress; and that Mr. Jackson died of natural causes. Defendants argued that there was no evidence that they killed Mr. Jackson through arsenic poisoning and/or "sugar overdoses" as claimed by Appellant. After a hearing, the trial court entered an order granting Defendants' motion for summary judgment as to all of Appellant's claims. The trial court reasoned that any claims for breach of contract, identity theft, or slander were time-barred, as those allegations stemmed from events occurring in the 1990s and early 2000s. As to undue influence or duress on Mr. Jackson by Defendants, the trial court found that Appellant did not point to any admissible evidence in his response to the motion for summary judgment. And finally, the trial court determined that there was no competent or admissible evidence regarding Mr. Jackson's death aside from the death certificate proffered by Defendants. Appellant put forth no evidence, at the summary judgment stage, in support of his theory that Defendants caused Mr. Jackson's death through arsenic poisoning or other means.

The trial court entered its final order on March 20, 2023, and Appellant then filed a timely notice of appeal to this Court.

## DISCUSSION

Appellant raises a host of issues on appeal. As a threshold matter, however, we must determine whether Appellant's principal brief to this Court complies with the applicable rules of briefing. Appellant proceeds in this appeal, as he did in the trial court, pro se. Nonetheless, he "must comply with the same standards to which lawyers must adhere." *Watson v. City of Jackson*, 448 S.W.3d 919, 926 (Tenn. Ct. App. 2014). As we have previously explained:

> Parties who decide to represent themselves are entitled to fair and equal treatment by the courts. The courts should take into account that many pro se litigants have no legal training and little familiarity with the judicial system. However, the courts must also be mindful of the boundary between fairness to a pro se litigant and unfairness to the pro se litigant's adversary. Thus, the courts must not excuse pro se litigants from complying with the same substantive and procedural rules that represented parties are expected to observe.

*Id.* at 926–27 (quoting *Jackson v. Lanphere,* No. M2010-01401-COA-R3-CV, 2011 WL 3566978, at *3 (Tenn. Ct. App. Aug. 12, 2011)). The Tennessee Rules of Appellate Procedure provide that an appellant's brief shall contain:

(1) A table of contents, with references to the pages in the brief;

(2) A table of authorities, including cases (alphabetically arranged), statutes and other authorities cited, with references to the pages in the brief where they are cited;

(3) A jurisdictional statement in cases appealed to the Supreme Court directly from the trial court indicating briefly the jurisdictional grounds for the appeal to the Supreme Court;

(4) A statement of the issues presented for review;

(5) A statement of the case, indicating briefly the nature of the case, the course of proceedings, and its disposition in the court below;

(6) A statement of facts, setting forth the facts relevant to the issues presented for review with appropriate references to the record;

(7) An argument, which may be preceded by a summary of argument, setting forth:

> (A) the contentions of the appellant with respect to the issues presented, and the reasons therefor, including the reasons why the contentions require appellate relief, with citations to the authorities and appropriate references to the record (which may be quoted verbatim) relied on; and

> (B) for each issue, a concise statement of the applicable standard of review (which may appear in the discussion of the issue or under a separate heading placed before the discussion of the issues);

(8) A short conclusion, stating the precise relief sought.

Tenn. R. App. P. 27(a). Further, Rule 6 of the Rules of the Court of Appeals provides, in relevant part:

(a) Written argument in regard to each issue on appeal shall contain:

(1) A statement by the appellant of the alleged erroneous action of the trial court which raises the issue and a statement by the appellee of any action of the trial court which is relied upon to correct the alleged error, with citation to the record where the erroneous or corrective action is recorded.

(2) A statement showing how such alleged error was seasonably called to the attention of the trial judge with citation to that part of the record where appellant's challenge of the alleged error is recorded.

(3) A statement reciting wherein appellant was prejudiced by such alleged error, with citations to the record showing where the resultant prejudice is recorded.

(4) A statement of each determinative fact relied upon with citation to the record where evidence of each fact may be found.

(b) No complaint of or reliance upon action by the trial court will be considered on appeal unless the argument contains a specific reference to the page or pages of the record where such action is recorded. No assertion of fact will be considered on appeal unless the argument contains a reference to the page or pages of the record where evidence of such fact is recorded.

Here, we must conclude that Appellant's arguments on appeal are waived for failure to comply with the above rules. While some record citations appear in Appellant's lengthy principal brief, the brief "is mostly unintelligible ramblings." *Lacy v. Big Lots Stores, Inc.*, No. M2019-00419-COA-R3-CV, 2023 WL 163974, at *3 (Tenn. Ct. App. Jan. 12, 2023). Rather than a recitation of the factual and procedural history of the case with appropriate record citations throughout, Appellant's "Statement of Facts" contains, for the most part, uncited commentary by Appellant. For example:

It's Common Knowledge that damage to the Temporal Lobes do not cause death, as the more reptilian back of the brain is autonomous functions like living and breathing. Anyone whose literate, scholarly or even had elementary health, psychology or the like knows that. Historically the same behavioral group practiced lobotomy, both chemically, electroshock and with an ice pick. Actor Bruce Willis currently suffers from temporal lobe degeneration, no one expects him to die from it. It's simply not a possible Cause of Death.

\*    \*    \*

Since a highly suspicious Cause of Death, it's a short step to say the Appellees were drugging Okey Jackson with Flomax, and Carolyn Jackson being a psych ward RN and Jessica Jackson being a coder for a neurologist that they made up some fictional ailments to tell people to hide their causing Okey Jacksons condition. Taken to the hospitals where other real conditions threatened Okey Jackson life, care was derailed among the false ailments was

so unbalancing or unduly influential from the 30-year employee of Tennova who was making all kinds of ruckus. They killed him simply by confusing and obfuscating the source of Okey's ailments. Afterwards they removed heavy metal records findings from Okey's medical record at Tennova and pressed on with needless operations under Carols Power of Attorney to authorize opioid anesthetics, stopping treatment of other toxins or critical conditions and purposefully kept Okey Jackson in a diabetic stupor/coma for years along the Flomax drugging.

The "Argument" portion of Appellant's brief is equally difficult to understand. While it does contain citations to some legal authority, the citations do not support coherent arguments as to how the trial court erred in granting summary judgment to Defendants. For example, Appellant cites the Fourteenth, Sixth, and Fifth Amendments to the United States Constitution, noting that these amendments "concomitantly provide[] a right to compel witness testimony." Appellant does not expound, however, with appropriate citations to the record, on how the trial court's grant of summary judgment infringes upon these rights. By way of another example, Appellant cites Tennessee Code Annotated section 39-12-103 to allege that Defendants engaged in a conspiracy to commit murder but, again, fails to expound on how this relates to any failure on the trial court's part in granting Defendant's motion for summary judgment. Indeed, the brief consists primarily of allegations of criminal conduct by Defendants and bias by the trial court, matters that were not at issue in the summary judgment proceedings below.

Accordingly, Appellant's "paltry and inapplicable citations" do not save his brief. *Lacy*, 2023 WL 163974, at \*3; *see also 21st Mortg. Corp. v. Ford*, No. W2022-00168-COA-R3-CV, 2023 WL 3064513, at \*4 (Tenn. Ct. App. Apr. 25, 2023) (issues waived on appeal where brief was "incoherent" and "render[ed] no ascertainable basis on which we [could] address the issues raised"). Because the majority of the brief is unintelligible and lacking in citations to the record and developed arguments, we deem Appellant's arguments on appeal skeletal. As we have previously explained, "a skeletal argument that is really nothing more than an assertion will not properly preserve a claim." *Id.* (quoting *Newcomb v. Kohler Co.*, 222 S.W.3d 368, 400 (Tenn. Ct. App. 2006)); *see also Sneed v. Bd. of Pro. Resp. of Supreme Ct.*, 301 S.W.3d 603, 615 (Tenn. 2010) (issues are waived on appeal "where a party fails to develop an argument in support of his or her contention"). Consequently, the arguments Appellant attempts to raise on appeal are waived, and this appeal is dismissed.

**CONCLUSION**

For the foregoing reasons, the appeal is dismissed. Costs of this appeal are assessed against the appellant, Shane Bruce, for which execution may issue if necessary.

_____
KRISTI M. DAVIS, JUDGE